

FILED
JULY 14, 2026
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40480-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHAWN PHILLIP STEVENS, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — Shawn Stevens was charged with unlawful possession of a firearm

in the first degree and making false or misleading statements to a public servant. A jury

found him guilty as charged, and the court sentenced him to 48 months of imprisonment.

Stevens appeals from his judgment and sentence only as to the conviction for

unlawful possession of a firearm. He argues the State violated his constitutional rights by

eliciting testimony that commented on his silence and urged the jury to infer guilt from

his silence.[1]

---

[1] Stevens also argues that the trial court violated his right to allocution under
RCW 9.94A.500 by announcing its sentence before Stevens had an opportunity to speak.
We need not address this issue in light of our decision to reverse and remand for a new
trial.

The State concedes comments made on Stevens's right to remain silent constitute a constitutional error. The State argues the error was harmless. We disagree. Given the State's concession on the constitutional error, the lack of overwhelming evidence against Stevens, and the corrosive impact of the constitutional error and how it might have impacted the finder of fact, we conclude the State has not proved the error was harmless beyond a reasonable doubt. We reverse his conviction for unlawful possession of a firearm in the first degree and remand for a new trial.

## FACTS

On December 10, 2020, Officer Sebastian Castilleja was on patrol and noticed a discrepancy with a vehicle's tabs. He performed a traffic stop to investigate. Castilleja asked the driver, later identified as Stevens, for his driver's license, registration, and insurance. Stevens informed Castilleja he did not have a driver's license, and he did not have a bill of sale, although he had purchased the vehicle earlier that day.

Stevens gave Castilleja two false names during the traffic stop. Castilleja was quick to determine Stevens was not providing accurate information. Despite the "very cold" temperature that night at approximately 30 degrees, Stevens was "sweating profusely" while speaking with Castilleja and avoided eye contact. Rep. of Proc. (Oct. 10, 2023) (RP) at 98.

Two passengers were in Stevens's vehicle. Amy Leonard was sitting in the front passenger seat. Levi Dennis was seated behind Leonard in the rear passenger seat. Castilleja was familiar with these individuals from an prior investigation in a separate matter. Castilleja learned Leonard and Dennis both had warrants for their arrest and called another officer to assist. During the arrest of Leonard and Dennis, a search of their persons did not reveal anything of evidentiary value.

Castilleja recontacted Stevens after placing Leonard and Dennis in the patrol car. Stevens told Castilleja he gave false names because he was concerned about his driving status. Castilleja removed Stevens from the car and detained him after learning Stevens had a suspended license. Due to COVID-19 restrictions, Stevens was not booked into jail, but the vehicle was seized. The vehicle was not searched at the time of the occupants' arrest as Castilleja planned to obtain a search warrant.

A few days later, Castilleja executed a search of the vehicle at the police station. When Castilleja opened the driver's side door, he saw a plastic bag containing what he believed to be methamphetamine and a glass smoking pipe between the driver's seat and the center console near the floorboard. He also located a Hi-Point .380 caliber handgun "under the driver's seat," wedged "between [a] metal object and the rail of the seat." RP at 124-25. The gun was next to the methamphetamine and smoking device. Castilleja stated the gun was not in "plain view" and described the location as "hidden" and that it

3

"appeared to be intentionally hidden in the vehicle." RP at 125-26. Castilleja had not seen the gun when he was interacting with Stevens on the night of the traffic stop.

Castilleja further explained the gun was found under the driver's seat, but not on the floor. Rather, the gun was "wedged between the structure of the seat." RP at 127. He described, "[T]he grip is basically what we saw when we checked under the seat. So the muzzle was facing the back of the vehicle" toward the rear passenger seat. RP at 127. When asked if someone could have placed the gun into that position from the back seat, Castilleja testified that "it would have been incredibly difficult for someone in the back to get the firearm into this position." RP at 128. The gun was loaded, but a bullet was not in the chamber.

During the search, Castilleja discovered two magazines for the gun in the center console. Castilleja located a bill of sale and a wallet in the rear passenger side, between the center console and passenger seat, but toward the back of the passenger seat. The bill of sale, dated September 18, 2020, transferred the title of the car to Stevens. The wallet contained Stevens's driver's license.

Castilleja sent the gun to the Washington State Patrol Crime Lab for fingerprint analysis. There was no actionable information received from the testing.

Stevens was charged with unlawful possession of a firearm in the first degree and making false or misleading statements to a public servant.

4

*Trial*

At trial, Castilleja testified that at no time during the traffic stop was he aware there was a gun in the vehicle. He did not locate any ammunition or firearm accessories, like a holster, on Leonard's or Dennis's persons. When he asked Leonard and Dennis if there was anything in the car that he should know about, they both denied knowing "anything about the foil or the narcotics or anything like that" in the car. RP at 166.

The prosecutor asked Castilleja about Stevens's silence during the traffic stop. That exchange is as follows:

> [THE STATE:] So once Miss Leonard was removed from the car, who was left?
>
> [CASTILLEJA:] Only Mr. Stevens.
>
> [THE STATE:] And what about Mr. Dennis?
>
> [CASTILLEJA:] I'm sorry, yes. Miss Leonard was removed first. Mr. Dennis was in the back seat. So at that point it was Mr. Stevens and Mr. Dennis who [were] across from each other.
>
> [THE STATE:] And so *when the defendant is now the only person occupied in the vehicle, did he ever alert you*, "*Hey . . . someone just shoved a firearm under my seat in this vehicle*"?
>
> [CASTILLEJA:] He did not indicate . . . any weapons or anything.

RP at 166 (emphasis added).

In closing argument, the prosecutor talked about Stevens's silence. The prosecutor set the argument up with the statement:

5

> *This is a case where the defendant did not tell the officer*, "*Hey, I know I have a firearm under the seat of this car.*" That's not the kind of knowledge you're going to get in this case. *But just because he didn't do that doesn't mean that you can't look at the facts in this case and infer that he had knowledge.*

RP at 205-06 (emphasis added). The prosecutor continued:

> So while we did not have a witness who testified: "I saw this defendant shove this gun under his seat," if you can infer from the facts in this case that that is so, and it has been proven beyond a reasonable doubt, that is sufficient evidence.

RP at 205-06. In challenging the contention that other occupants in the car could have stowed the gun under the driver's seat, the prosecutor argued:

> Additionally if Miss Leonard got rid of this firearm somehow and stuck it under the seat in the dark, like she has amazing skills. I guess she can see in the dark or something, because when you look where this gun is found, you have to reach over, magically get it under there, and it's not even her car. Who says that she would know a gun could fit under there? That's the kind of thing that you would see an owner of a vehicle would know where to store it at.
>
> And certainly let's say she would do that, *this defendant did not tell police he was in possession of a gun.* If he knew Miss Leonard stuck a gun under him and put her two magazines in the center console, and she gets out of the car*,* he's sitting right by those, he's the last person in the car with a gun and with two magazines, he's in possession of a firearm, *but of course he doesn't tell the police that*, because Miss Leonard didn't put those things in there. Those are things just being thrown out at you to distract you from the facts of this case, and those facts show you that this defendant in his own vehicle had a firearm and had these two magazines, and from the facts in this case you can infer knowledge that he was in possession of those items. And so the state will ask you to return a verdict of guilty on both counts.

6

RP at 214-15 (emphasis added).

In response, Stevens's counsel argued that any one of the three occupants in the car had a reason to conceal the gun and that the State did not prove its case beyond a reasonable doubt.

After deliberation, the jury found Stevens guilty as charged.

Stevens now appeals.

## ANALYSIS

*Right to remain silent*

On appeal, Stevens argues the prosecutor's use of his silence was a manifest constitutional error violating his right to remain silent. The State concedes. However, the State argues the error was harmless. We accept the State's concession that the prosecutor improperly commented on Stevens's exercise of his right to remain silent. We agree with Stevens that this error was not harmless.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution guarantee individuals will not be compelled by the government to give evidence against themselves. *State v. Escalante*, 195 Wn.2d 526, 531-32, 461 P.3d 1183 (2020). At trial, "the State may not elicit comments from witnesses or make closing arguments relating to a defendant's silence to infer guilt from such silence." *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). "A comment

on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

The error claimed in this case implicates a constitutional interest. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Here, the State asked Officer Castilleja a question regarding Stevens's silence during the traffic stop. In closing argument, the State urged the jury to use Stevens's silence to infer he possessed the firearm. The State concedes that the prosecutor's questioning of Castilleja and the prosecutor's closing argument violated Stevens's constitutional right. We agree with this concession. Therefore, the question on appeal is whether the violation of Stevens's right to remain silent was or was not harmless beyond a reasonable doubt.

The Washington Supreme Court recently clarified the proper constitutional harmless error test in *State v. Magana-Arevalo*, 5 Wn.3d 781, 582 P.3d 330 (2026). The Supreme Court held that a reviewing court employs a two-pronged framework and "must ask whether the State has proved the error harmless beyond a reasonable doubt, considering *both* the strength of the properly admitted evidence of guilty as well as the prejudicial impact of the erroneously admitted evidence on even the properly admitted evidence." *Id*. at 810. A reviewing court must be able to say after weighing both factors that the error did not contribute to the verdict. *Id*. at 817-19. It is the State's burden to

8

prove that the error is harmless beyond a reasonable doubt. *State v. Lynch*, 178 Wn.2d 487, 494, 309 P.3d 482 (2013).

Here, in applying the two-pronged framework review, we conclude the State has not met its burden.

### A.     Strength of the properly admitted evidence

We first review the strength of the properly admitted evidence that supports the elements of unlawful possession of a firearm.

This is a constructive possession case. Constructive possession cases require a fact-intensive inquiry. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). Although a person may constructively possess an item even if others are present, close proximity alone is insufficient. *See State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). In examining the totality of the circumstances, courts consider the knowledge of the defendant to the item's presence, the ability to exclude others from possession, or the connection of the person to the premises. *See State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997); *State v. Edwards*, 9 Wn. App. 688, 690, 514 P.2d 192 (1973).

Here, the State's case rests entirely on circumstantial inferences: the gun's location beneath the driver's seat, the presence of the magazines in the center console, Stevens's wallet, and the bill of sale showing Stevens's ownership of the car. Additional circumstantial evidence includes Stevens twice giving a false name to Officer Castilleja

9

and his demeanor of sweating and avoiding eye contact. Additionally, the other people in the car did not have ammunition or firearm accessories, like a holster, on them.

However, there was no forensic evidence linking Stevens to the gun—no fingerprints, DNA, or ballistics. No testifying witness observed Stevens handling the gun. There was no evidence that Stevens was observed making furtive movements toward where the gun was ultimately located or that he engaged in behavior such as taking a prolonged time to stop during the traffic stop. At the time of the traffic stop, and during Castilleja's interactions with the occupants of the car, including when removing Stevens from the car, Castilleja did not see the gun and did not know the gun was in the car because it was not in plain view.

The two other occupants had equal access to the center console area where the additional magazines were found. Castilleja's testimony discounted the rear passenger's ability to access the gun from where it was located under the driver's seat, and the prosecutor's closing argument discounted the front seat passenger's ability to stow the gun where it was found.

This largely circumstantial case of constructive possession is built on inferences of Stevens's proximity to the gun, additional ammunition, his wallet, as well as a bill of sale showing Stevens owned the car, and his behavior while interacting with law enforcement. While probative, this evidence does not overwhelming establish Stevens's guilt. *See State*

10

*v. Ianniciello*, 36 Wn. App. 2d 258, 266-68, 582 P.3d 372, *review granted*, 589 P.3d 789

(2026).

### B.      Prejudicial impact of the tainted evidence

The prosecutor not only asked Officer Castilleja whether Stevens volunteered

information about the gun but expressly urged the jury in closing arguments to use

Stevens's exercise of his constitutional right to remain silent as substantive evidence that

Stevens knowingly possessed the gun—the precise element in dispute. The comment

went to the heart of the disputed issue and had the capacity to corrode the jury's

evaluation of the already circumstantial untainted evidence. A reasonable juror could

easily conclude Stevens's lack of denial implies his ownership of the gun. This is exactly

the type of inference the Fifth Amendment and article 1, section 9 of the Washington

Constitution prohibit. *See Easter*, 130 Wn.2d at 241. The tainted evidence had the

capacity to undermine the jury's assessment of the already circumstantial untainted

evidence. Therefore, the prejudicial impact of the tainted evidence was substantial and

corrosive. *Magana-Arevalo*, 5 Wn.3d at 816.

### C.      Both prongs together

When the strength of the untainted evidence and the prejudicial impact of the error

are weighed together, we cannot conclude beyond a reasonable doubt that the

constitutional violation did not contribute to the verdict. The circumstantial nature of the

11

No. 40480-3-III
*State v. Stevens*

State's case made the jury particularly susceptible to improper inferences drawn from Stevens's silence. Because the State has not carried its burden, the error requires reversal.

CONCLUSION

We accept the State's concession of constitutional error and hold it was not harmless beyond a reasonable doubt. Stevens's conviction for unlawful possession of a firearm in the first degree is reversed, and the matter is remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Hill, J.

12